# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| EDWIN D. CALLIGAN, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| v. | ) | CAUSE NO.: 1:07-CV-320 TS |
| BILL K. WILSON, | ) |  |
| Respondent. | ) |  |

## OPINION AND ORDER

Edwin D. Calligan, a *pro se* prisoner, filed a Petition Under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a Person in State Custody Seeking Review of a Prison Disciplinary Sanction [DE 1]. The Petitioner challenges prison disciplinary proceedings that resulted in a loss of 365 days earned credit time and a demotion in credit class. He raises three grounds for relief: (1) insufficient evidence that he caused "serious bodily harm;" (2) denial of his requested witnesses; and (3) improperly imposed sanctions. [Petition, DE 1 at 1,3].

The Respondent has complied with the Order to show cause [Response to Order to Show Cause, DE 7] and submitted a supporting memorandum [Memorandum in Support of Response to Order to Show Cause, DE 8] along with the administrative record. The Petitioner filed a Traverse [Traverse to Respondent's Response to Order to Show Cause, DE 9] and supporting memorandum. [Memorandum in Support of Traverse, DE 1].

## DISCUSSION

**A.      Procedural and Factual Background**

After the Petitioner physically assaulted two correctional officers on August 14, 2007,

one of them, Officer Bernacet[1], issued a conduct report (the Report) against the Petitioner for a Code 102 violation, "battery upon a person." The Report states:

> On the above date and approx time I. ofc. Bernacet was working Post 4 when ofc McClain "unit 41" was escorting residents into Post 4 from EC side. When ofc. McClain openned (sic) the Post 4 door I heard her having words with Res. Calligan. I did not know what they were saying or that they were arguing. As I was sitting at my desk handling passes and other residents I noticed that ofc. McClain turnned (sic) around and said something to Res. Calligan, at this time Res. Calligan who was pushing a cart came around to the front of the cart and started punching away at ofc. McClain's face.
>
> As I got up from my desk ofc. McClain went down to the ground and Res. Calligan started kicking ofc. McClain. As I ofc. Bernacet got to Res. Calligan and started to grab him, Res. Calligan turnned (sic) and punched me, ofc. Bernacet on the right side of my face, hitting my temple and part of my Eye (sic). I ofc. Bernacet went to the ground scraping my left arm. When I ofc. Bernacet got up I pulled my mace and sprayed Res. Calligan at which time he started hollering don't mace me I'll cuff up, I ofc. Bernacet proceeded to handcuff Res. Calligan 994335.

[Exhibit A, DE 8-2].

Each officer received "urgent care" and was sent to an outside facility for additional treatment. The photographs of Officer Bernacet's injuries are not clear, but it is not disputed that two days after the incident, bruising was still visible across Officer Bernacet's face, the left side of his head, and his left arm. [Exhibit C, DE 8-4].

The Petitioner pleaded not guilty at the August 17 screening, and requested three witnesses: offenders Jewel, Williams, and an unidentified prisoner. [Exhibit B, DE 8-3]. On August 31, a three member Disciplinary Hearing Board ("DHB") held a hearing. The hearing date had previously been postponed to accommodate Jewell's unavailability on an earlier date.

---

[1] Calligan has filed another habeas petition attempting to challenge a separate conduct report that was issued against him based upon the assault upon the second officer, McClain, which is pending before the Honorable Rudy Lozano in case 1:07-cv-321.

[Exhibit D, DE 8-5]. At the hearing, the Petitioner stated that he waived Jewell's statement. The record does not show he waived the statements from the other witnesses, but nevertheless, shows that the Petitioner indicated he was prepared to proceed with the hearing, and that he prepared a written statement that was submitted to the DHB. In his statement, the Petitioner claims he "completely lost it" after Officer McClain spit in his face, but he denies knowing whether or not he hit Officer Bernacet. The Petitioner also posits that when the unidentified prisoner tried to hit him, he could have hit Officer Bernacet by mistake. The Petitioner further notes that Officer Bernacet "never complained of receiving any serious bodily injury or suffered any type of pain. He stated he was hit and scraped his elbow." [Exhibit G, DE 8-8].

Based upon staff reports, the DHB found the Petitioner guilty of committing battery upon another person. The stated reason for its decision was that the "[r]eport clearly states offender assaulted staff member." [Exhibit H, DE at 8-9].

In the Disciplinary Hearing Appeal ("DHP"), the superintendent upheld the DHB's determination, observing that the officer "required medical attention outside of this facility" and that the conduct report "supports the charge." [Exhibit I, DE 8-10 at1].

**B.      Legal Analysis**

The Petitioner has a liberty interest in earned good time. So before it can be taken away for misconduct he is entitled to basic procedural protections, which are met by: (1) prior written notice of the charges; (2) an opportunity to present evidence; (3) an impartial decision maker; (4) a written statement of the evidence supporting the disciplinary action and the reasons for it; and (5) "some evidence in the record" to support the finding of guilt. *See Wolff v. McDonnell*, 418

U.S. 539, 557 (1974). In *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), the United States Court of Appeals for the Seventh Circuit explained:

> In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.

*Id.* at 786 (quotations marks and citation omitted).

In his Petition, the Petitioner argues that the evidence was not sufficient to find him guilty of a Class A battery, that he was denied witnesses, and that his sanctions were improperly imposed.

**1.    *Sufficiency of the Evidence***

The Petitioner argues that the record does not support the guilty finding for Class A-102 battery, which requires serious bodily injury, but instead only supports the lesser battery offense that applies to fighting that does not inflict serious bodily injury, Class B-212. [DE 10 at 5-6]. The Petitioner maintains that the record does not show that Officer Bernacet incurred any serious bodily injury, because "no injury report or medical report" was submitted to the DHB. He argues that the report of Officer Bernacet's urgent care treatment does not constitute sufficient evidence of a serious injury, because IDOC policy demands that all participants in a fight be sent to urgent care.

The Indiana Department of Corrections' ("IDOC") Adult Disciplinary Procedures ("ADP") manual contains two battery offenses. The Petitioner was charged with the more serious one: "Committing battery upon another person, with a weapon (including the throwing of bodily fluids or waste on another person) or inflicting serious injury." [Exhibit L1-2, DE 8-13 at

4

2]. This is a code 102, Class A offense. The other less serious battery, a code 212, Class B offense involves "[c]ommitting battery upon another person without a weapon or inflicting serious injury (e.g. fighting)." [ DE 10 at 17]. The difference between the two offenses in this case turns on the presence of "serious injury." As used in the ADP, "serious injury" means "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss, impairment of the function of a bodily member or organ, or loss of a fetus." Ind. Code § 35-41-1-25. [DE 10 at 14]. Under state law "whether bodily injury is 'serious' has been held to be a matter of degree and therefore a question reserved for the factfinder." *Hurst v. State*, 890 N.E.2d 88, 97 (Ind. Ct. App. 2008) (quoting *Hill v. State*, 592 N.E.2d 1229, 1231 (Ind. 1992)). No bright line distinguishes "bodily injury" from "serious bodily injury." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004).

Officer Bernacet recounts that the Petitioner punched him hard enough to knock him down, causing his arm to be scraped when he hit the ground. The blow hit the officer's temple as well as his eye. The Petitioner does not deny that Officer Bernacet was injured in the assault. The Petitioner proffers no evidence to support his claim that Officer Bernacet received urgent care merely to conform with IDOC policy. As the Petitioner notes, the Final Reviewing Authority denied him relief because "serious bodily injury includes the term extreme pain." [DE 10 at 7]. The question is whether Bernacet's injuries, which resulted in bruising that remained visible at least two days later, is "some evidence," of extreme pain sufficient to constitute "serious injury."

Officer Bernacet said that the Petitioner "punched" him, which indicates the Petitioner

struck him with a closed fist. When the Petitioner hit him, Bernacet fell; this is some evidence of the power behind that punch. Moreover, the bruising evident some days later further reflects the severity of the blow that Bernacet received to the side of his head. Consequently, the DHB could infer that Bernacet experienced extreme pain, which may be established by circumstantial evidence, *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000); direct medical proof is not necessary, *cf. Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir.2002) (relying on reasonable inference to conclude that "some evidence" supported the disciplinary charge). *See also Carter v. State,* 862 N. E. 2d 723 (Ind. Ct. App. 2007) (rejecting adoption of specific standard for the term "extreme pain"). While the Court recognizes the facts of this case could be interpreted differently, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. at 457. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*, 472 U.S. at 455–56. The record indicates that the DHB's determination was based upon "staff reports" and the Petitioner's statement. The record contains some factual basis to support the DHB's determination that the Petitioner committed a battery upon a person causing serious injury.

**2.** *Witnesses*

The Petitioner also argues that his right to present evidence was violated, because the facility did not obtain statements from his requested witnesses. At the screening the Petitioner alleges he requested three prisoner witnesses, Jewell, Williams, and an unknown prisoner, who "jumped in and helped." Because the Petitioner waived Jewell's statement, its omission cannot

6

be the basis for any due process violation. Although the Petitioner did not waive Williams's statement, Williams was no longer at the facility. The Petitioner maintains no effort was made to identify the third witness to get a statement from him. (DE 10 at 8-11) The Petitioner did provide a witness statement from offender Michael Norris, who stated that he did not remember seeing anything about the incident. (Ex. E.)

*Wolff* circumscribes the rights afforded the accused in a prison disciplinary proceeding; they are much more limited than those afforded to those accused in a court of law. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits" and may refuse to allow a prisoner to call certain witnesses or have access to certain evidence if the needs of the prison so require. *Wolff*, 418 U.S. at 566. Regarding witnesses, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Moreover, there is no right to confrontation or cross-examination in a prison disciplinary proceeding. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). *Wolff* requires only that the Petitioner have the opportunity to present relevant exculpatory evidence in his defense.

The Petitioner insists that Williams and the unknown prisoner "could" have testified that the latter hit Officer Bernacet. [DE 10 at 10]. The Petitioner has not established that testimony from another prisoner who "jumped in and helped," even existed. The conduct report does not reference any other witnesses or the involvement of another offender (who surely would have been reported if he was involved in the altercation). The record indicates that Williams was unavailable because he "went home." [Exhibit B, DE 8-3.] The Petitioner complains that there is insufficient evidence to establish that Williams was actually released from prison, and that the

7

prison could have obtained prisoners' statements before they left the facility. [Pet. Mem. 9, DE 10.] The challenge to the adequacy of the proof that Williams was unavailable invites the Court to reweigh the evidence, which it is not required to do. Furthermore, *Wolff* does not obligate the IDOC to employ particular investigatory methodologies. Even if Williams's testimony would have supported the Petitioner's claim that the Petitioner was not the one who hit Officer Bernacet, it would have simply conflicted with Officer Bernacet's identification of the Petitioner as the only offender involved in the incident and the one who struck him. The Petitioner presented his defense theory to the DHB (that another unknown offender became involved and could have accidentally hit Officer Bernacet) and it rejected the theory based on the conduct report and upon the Petitioner's own statement that he could not say for certain that he did not hit Officer Bernacet. Because the Petitioner cannot establish that the absence of the potential witnesses prejudiced him, any violation of his due process rights was harmless error.

**3.** *Sanctions*

Finally, the Petitioner contends that the DHB violated his rights to due process because it imposed the sanctions against him "out of sequence." [DE 1 at 3]. He alleges:

> Petitioner could not be demoted from CC II to CC III, as he was not in CC II prior to this guilty finding of case # WCC- 07-08-0415. Petitioner could not be given disciplinary segregation time from 8/15/08 to 8/15/09, as he was not given segregation time prior to the guilty finding of case # WCC 07-08-0415.

*Id.*

The Petitioner's real complaint is that the sanctions are consecutive, which he implicitly acknowledges IDOC policy permits. [DE 8-10 at 2, ¶ 3]. The Final Reviewing Authority noted that the sanctions fell within the IDOC disciplinary guidelines, and the Petitioner does not

dispute this. The DHB based the sanctions upon the seriousness of the offense, which involved the Petitioner's assault upon a corrections officer causing him serious injury. The punishment was not excessive. Even if the sanctions violated IDOC policy and procedure, it would not be a basis for federal *habeas corpus* relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding that violations of state law do not entitle prisoners to *habeas corpus* relief).

## CONCLUSION

For the reasons set forth above, the Court:

(1) **DENIES** Petition Under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a Person in State Custody Seeking Review of a Prison Disciplinary Sanction [DE 1] because the Petitioner has not established the prison disciplinary proceedings violated his constitutional rights to due process;

(2) **DENIES** the Petitioner's Motion for Evidentiary Hearing [DE 13] as MOOT;

(3) **DENIES** the Motion for Leave of Court to Conduct Discovery [DE 15] as MOOT;

and

(4) **STRIKES** the Petitioner's Request for Production of Documents [DE 16], Interrogatories [DE 17], and Request for Admissions [DE 18].

SO ORDERED on January 15, 2009.

                                         s/ Theresa L. Springmann
                                         THERESA L. SPRINGMANN
                                         UNITED STATES DISTRICT COURT